Hitchcock, J.
The lands in controversy are situate in the county of Union, within the district of country usually denominated the Virginia military district; and, as is' not infrequently the case within that district, the same lands are claimed by two individuals. Patten claims an equitable interest in virtue of an entry made January 20,1820; while Wallace claims the legal title by patent issued in 1836, based on an entry made in. 1833. The patent of Wallace, which calls for 614 acres, actually includes within its bounds the entire entry of Patten for 1,000 acres, and something like 100 acres in addition. Whether Patten has in truth any equity in the land, seems to depend upon the fact whether the second entry, which was made by Sullivant for him, has been actually surveyed. That an entry was made in the books of the principal surveyor, in his name, January 20,1820, and which covers a 1 great proportion of the Hand included within Wallace’s patent, is not controverted. But it is insisted that the same books show that this entry was surveyed on the 12th of July thereafter. Not that the land actually covered by the entry was surveyed, but that an entry of the same number, to wit, No. 4,572, was surveyed. It is not pretended that the lands were the same, nor could they be, because the lands entered were upon the waters of the Scioto, and the lands surveyed upon the waters of Mad river. Nor were they in the same county. But it is insisted that the entry is *278 merged in a subsequent survey, and that, after survey is actually made, no attention is to be paid to the calls of the entry. Thus, if an entry is made upon the waters of the Little Miami, in Hamilton county, it may be surveyed upon the waters of the Scioto, in Union county. It may be so. But it would seem to me a little extraordinary that the entry may appropriate one tract of land, and a survey based upon it, another and different tract. There-must be first an entry, then a survey. Both are necessary, by the law regulating the subject. But, upon the principle advocated by counsel, the entry is useless, and the warrant holder maysurvey his land wherever he pleases, the entry to the contrary notwithstanding. I know that surveys have been and will be sustained, when they do not entirely agree with the calls of the entry. But I am not prepared to say that a locator may entirely disregard the calls of his entry, and execute his survey in a different and distinct part of the country. Still, all entries should be made and surveys executed so that an opportunity may be given to subsequent locators to appropriate the remaining vacant lands.
It is well established that a locator, having made his entry upon land, may afterward withdraw his warrant from it. So long as the entry remains a subsisting entry, it is an appropriation of the land. But when it is withdrawn, the land becomes vacant. So, if a survey is executed upon the entry, and the entry is subsequently withdrawn, the land becomes vacant. Until carried into grant, it is within the power of the locator to vacate the land.
*Upon the books of the principal surveyor of the district the following memorandums appear :
“ Entry book B, page 18:
“ October 5, 1804. No. 4,572. Robert Patten, assignee, enters 1.000 acres of land on a military warrant, No. 4,952, beginning at the southwest corner of the representatives of James Colderwood’s entry, No. 3,684, running N. 69 E. 400 poles; thence at right angles, S. 21, E. for quantity.
“ Withdrawn, entry 492.”
“ Entry book B, page 492 :
“January 20,1820. No. 4,572. Robert Patten, assignee, enters 1.000 acres of land on a military warrant, No. 4,952, on the waters of the Scioto, beginning at a maple, ash, and hickory, in the Indian boundary line, northwesterly corner to Mrs. Pelham’s survey, in a line of another of said Pelham’s surveys, No. 6,307; *279 thence,with a line of said last-mentioned survey, N. 72,*E.400 poles; thence N. 18, W. 376 poles; thence S. 80, W. 407 to the beginning.”
Taking these two memorandums together, it can not be doubted that the first entry was withdrawn and a new one made January 20, 1820; and this latter entry is sufficiently explicit to appropriate the land. In fact it is much more specific than usual; for it gives all the lines by which the land intended to be appropriated is included. If the evidence had stopped here, I suppose there would have been no difficulty in the case. This withdrawal and new entry was made by Lucas Sullivant, and it is denied by the answer that he had any authority to do it. We think, however, that there can be no difficulty on this account. He, as the evidence shows, made the original entry; and when he discovered that that entry could not be available, we see no objection to his withdrawing it, and making one which would be available.
But the real difficulty grows out of the fact that a survey purporting to be a survey of No. 4,572, appears upon the books of the principal surveyor, as follows:
*“ Survey book C, page 426. No. 4,572. Surveyed for Robert Patten, assignee, 1,000 acres of land in a military warrant No. 4,952, on the waters of Mad river, beginning at two hickories, southwest corner of the representatives of James Colderwood’s survey, No. 3,634; thence N. 69, E. 400 poles, crossing several small branches, to a small dogwood, a large white oak, and two small ashes; thence S. 21, E. 400 poles, to two small dogwoods and a large red oak; thence S. 69, W. 400 poles, to the beginning. Signedp Duncan McArthur, D. S.; Matthew Bonner, James Leiper,'C. C.; E. P. Kendrick, marker. Examined and recorded, July 12, 1820.” - '
Now it is manifest that this survey is based upon the entry made in 1804, which was withdrawn in 1820. There is no doubt upon this point. Still, by the reference upon the surveyor’s book, this survey is pointed to as being a survey of the entry made in 1820. It was recorded after the date of that entry. But it will be remarked that the survey itself bears no date. From it, we can not learn when it was actually executed upon the ground. Wallace says that he, from examination of the books, supposed that, although the first entry was withdrawn, yet that Patten, or those acting for him, concluded to abandon the second entry, and abide by the first. If this were so; if the conduct of Patten or *280 those acting for him, has been such as to deceive him, equity .ought not to show them any favor.
It has been already remarked that, if a survey be executed pursuant to an entry, and the warrant is subsequently withdrawn from the land, it takes with it the survey, and the land is left vacant. In this case, the survey was recorded a few months after the change of the entry. Now, what would have been the course of a common prudent man, upon the examination of these boobs, and finding the memorandums as before stated? It seems to us that he must have been satisfied that there was some mistake; that there was something wrong. And, if he had been anxious to do that which was exactly right, he would have made some further inquiry; would have gone to *the person interested, to ascertain the true state of the fact. Good neighborhood would at least require this; and it would be a good rule to observe even among locators. These books of the principal surveyor, although from necessity evidence, and very important evidence, still are not of that absolute verity which is attached to records. If mistakes are discovered in them, those mistakes may be corrected so far as to attain justice. It seems to us that, from those memorandums alone, a subsequent locator should have been put upon inquiry.
But it is allowed in the cross-bill, that this survey was actually executed before the entry was withdrawn, and that this fact was known to Wallace. This, however, is denied in the answer. What, then, is the proof? Matthew Bonner testifies that he assisted Kendrick to execute this survey, and that it was done in August or September, in the year 1819. The witness states further that he informed Wallace of this .fact. Now it is true there is the direct testimony of but one witness to contradict the answer; but, when the circumstances are all taken in connection with the testimony of this one witness, we are satisfied that Wallace must have known this fact, that this aurvey was made, and intended to be made, pursuant to the first enti’y.
It is insisted, however, that it is immaterial whether Wallace had notice; that that is a question which can not affect titles in the military district. I am aware that the equity proceedings, with respect to these titles, are somewhat anomalous, and that there are cases where notice of a prior attempted appropriation will not affect a subsequent locator — as, for instance, where an entry is *281 made which is void for want of the notoriety of its calls, or for any other reason. But the reason of this rule is apparent. The entry being void, no land is appropriated. Of course notice of an attempt to appropriate, can affect no one. The land is still vacant, and subject to location. But, in a case like the present, where, by the entry, the-land was actually appropriated, and a mistake has happened, with respect to the survey, notice to a subsequent locator must have the same effect as would notice in any other case.
*But it is urged that Latham procured this survey to be recorded; that he is the agent of Patten, and therefore that Patten should be concluded by the record. Latham, in his testimony, admits that, after the entry was withdrawn, he forwarded the plat of survey to the office, but says it was through mistake, he not knowing at the time the original entry had been withdrawn. We see nothing in this which can alter the case. Believing that Wallace must have known and did know that the survey was executed before the first entry was'withdrawn, that it was not the intention of that survey to merge the record entry, we are of opinion that the original bill can not be sustained, but must be dismissed.
It is objected by counsel for the defendant, in the cross-bill, that there can not be a decree in favor of Patten until he shall have procured his patent. We are not prepared to admit this doctrine to the extent claimed, though I am free to say that I do not recollect a case of this description in practice, where there was not a junior patent as well as a senior entry. But still, if the evidence were sufficient to show that a complainant had an indisputable right to the legal title, I see no insuperable reason why there should not be a decree in his favor, inasmuch as the legal title has passed out of the United States and is vested in the defendant. But before we can do this, we must have the same evidence before us as would be required in the general land office before a patent is allowed to be issued. We must have the warrant and evidence of its transfer, and such other evidence as is required in that office. Not having this evidence, we are willing to continue the cross-bill and remand it to the county, or to dismiss it without prejudice, at the election of counsel.